## INSURANCE COMPANY *v.* GRIDLEY.

1. An application made by .A. to an insurance company, upon which a policy on his life was issued for the benefit of his wife, contains a stipulation that his statements therein "shall form the basis of the contract," and that any untrue or fraudulent answers, any suppression of facts in regard to his health, habits, or circumstances material to the risk, "shall vitiate the policy and forfeit all payments thereon." In reply to a question as to whether certain of his relatives had any hereditary disease, he answered, "No hereditary taint of any kind in family on either side of house, to my knowledge." A. having died, his widow brought suit and made out her case. The company then proved that B., an uncle of A., had been insane for more than a year preceding his death, and had died in an insane asylum upwards of twenty years before the date of A.'s application. The jury were instructed to find for the plaintiff. *Held,* 1. That the instruction was proper. 2. That, to maintain its defence, the company was bound to prove, not only the insanity of B., but that it was hereditary, and that both facts were known to A. when he answered the question.

2. *National Bank* v. *Insurance Company* (95 U. S. 673) cited and approved.

ERROR to the Circuit Court of the United States for the Eastern District of New York.

The facts are stated in the opinion of the court.

*Mr. Edward Salomon* for the plaintiff in error.

*Mr. Robert Sewell, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

This is an action upon a policy of insurance insuring the life of Fayette R. Gridley in the sum of $10,000, for the benefit of his wife, the defendant in error.

The policy sets forth that it was issued "in consideration of the representations made in the application therefor and of the premium," &c. It sets forth, further, that "if any of the statements or declarations in the application for this policy, and upon the faith of which it is issued, shall be found in any material respect untrue, then . . . this policy shall be null and void."

The application was signed by the assured in behalf of himself and his wife. The first clause is as follows: " An answer to each of the following questions is required from persons proposing to effect insurance in this company, which answers form

the basis of this contract." It concluded with the declaration "that the above are the applicant's own fair and true answers to the foregoing questions. . . . And it is hereby agreed that these statements with this declaration shall form the basis of the contract for assurance, and that any untrue or fraudulent answers, — any suppression of facts in regard to the person's health, habits, or circumstances, — material to the risk, . . . shall vitiate the policy and forfeit all payments made thereon."

The application contained, among others, the following question : " Have the person's (whose life is to be assured) parents, uncles, aunts, brothers, or sisters been afflicted with consumption, scrofula, insanity, epilepsy, disease of the heart, or any other hereditary disease?" The applicant answered: "No; except one brother temporarily insane six months since. Causes, domestic and financial troubles, followed by hard drinking and excessive use of opium and morphine. Recovery followed reformed habits. No hereditary taint of any kind in family on either side of house, to my knowledge."

It was proved on behalf of the company that Abraham Gridley, an uncle of the assured, was insane for more than a year preceding his death, and that he died in the Bloomingdale Insane Asylum upwards of twenty years before the application for the insurance here in question was made.

The testimony being closed, the counsel for the company asked the court to instruct the jury to find a verdict for the defendant. This was refused. The court thereupon instructed the jury to return a verdict for the plaintiff. The jury found as directed. The defendant duly excepted to the instruction given and to that refused, and sued out this writ.

The only question argued before us is whether the court erred in instructing the jury to find for the plaintiff. The solution of that question depends upon the construction and effect to be given to the interrogatory and the answer to which our attention was called by the counsel for the plaintiff in error.

It is a recognized rule in the construction of statutes, that " a thing which is within the intention of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the stat-

ute unless it be within the intention of the makers." *People* v. *Utica Insurance Co.*, 15 Johns. (N. Y.) 358.

This proposition is equally applicable to other written instruments. The object of all symbols is to convey the meaning of those who use them, and when that can be ascertained, it is conclusive. The intent of the law makers is the law, and here the intent of the parties is the contract.

It was material to the risk, and hence important to the insurers, to know whether either of the maladies named or any serious malady not named was hereditary in the family of the applicant. If the question were answered in the affirmative, it might be a reason for declining to issue the policy. On the other hand, if either of such maladies existed in a member of the family other than the applicant, but was not hereditary, and, on the contrary, existed, according to the family history, for the first time in the person affected, and in that case was the effect of known contemporaneous causes, then it was not material to the risk, was of no interest to insurers, and it is fairly to be presumed they did not care to be advised upon the subject.

This may be illustrated by the case of insanity mentioned in the answer of the applicant. He says his brother was afflicted in that way. "Causes, domestic and financial troubles, followed by hard drinking and excessive use of opium and morphine." He adds: "Recovery followed reformed habits." This explanation took the subject wholly out of the scope and purpose of the inquiry by the company, and made it, as it were, *res inter alios acta.*

The last sentence of the answer is, "No hereditary taint on either side of the house, to my knowledge."

The affirmation was restricted and narrowed down to what the applicant himself personally knew touching the subject. It has this extent; no more.

The company might have refused to insure unless the qualification were withdrawn. Having failed to do this, such is the contract of the parties.

To make out the defence sought to be established by the insurers, three things were, therefore, necessary to be shown: that the alleged insanity of the uncle had existed; that it was

hereditary; and that both these things were known to the applicant when he answered the question.

The first point was clearly proved. In relation to the second and third, there was no proof whatever. What was proved, without what was not proved, was of no account. The defence, therefore, wholly failed. It follows that the instruction complained of was properly given.

The subject of questions and answers in cases like this was fully considered by this court in *National Bank* v. *Insurance Company*, 95 U. S. 673.

It is unnecessary to go over the same ground again, or to add any thing to what is there said.

*Judgment affirmed.*