[No. 192. Decided April 29, 1891.]

D. F. MURRY v. CHARLES T. FAY, LAMMON E. SAMPSON, AND JOSEPH JOHNS, *Commissioners of Pierce County.*

COUNTY BONDS — POWER TO ISSUE — CONSTRUCTION OF STATUTE.

Under the act of March 21, 1890 (Laws 1889-90, p. 37), the board of county commissioners of any county can issue bonds of the county for the funding of outstanding warrants without a vote of the people of the county, where the amount of the existing indebtedness of said county is less than one and one-half per centum of the taxable property of said county, as ascertained by the last assessment for state and county purposes.

*Certified from Superior Court, Pierce County.*

The facts are fully stated in the opinion.

*A. E. Joab,* for plaintiff.

*W. H. Snell,* for defendants.

The opinion of the court was delivered by

ANDERS, C. J. — This was an action brought by plaintiff, who is a resident and tax-payer of Pierce county, in this state, against the defendants, who are county commissioners of said county, to restrain said commissioners from issuing the negotiable bonds of the county to the amount of $200,000 for the purpose of funding the outstanding county indebtedness, without first submitting the question of issuance to the voters of the county. It is substantially alleged in the complaint that the indebtedness proposed to be funded by the issuance of said funding bonds, together with the existing indebtedness of said county, will not exceed the sum of one and one-half per centum of the taxable property of said county, as ascertained by the last assessment thereof for state and county purposes; that the defendants, the county commissioners of said county, intend and are now about to issue said bonds in accordance with the terms of previous resolutions of the board (which are set forth in the complaint), and that they have not complied with the precedent conditions and requirements of the act of the legislature of the state approved March 21, 1890, entitled "An act authorizing and empowering the organized counties of the State of Washington to contract indebtedness, to issue bonds for funding the same, and declaring an emergency," in this, that the said commissioners have not submitted to the voters of said county, at an election held under the provisions of the act of the legislature above referred to, the question of issuing bonds to procure money for strictly county purposes, nor have three-fifths of the voters of the said county assented thereto; and that the defendants passed said resolution and propose to issue said bonds without first submitting said question of the issuance of said bonds to the voters of said county. It is also set up in the complaint that if the said commissioners

23—2 WASH.

are allowed and permitted to so issue said bonds, without having first complied with the conditions of the said act of the legislature, the same will be illegal and void, and the plaintiff and all tax-payers of said county will suffer great, unnecessary and unjust costs and damages. To this complaint a general demurrer was interposed, which the court sustained, and caused a judgment to be entered *pro forma* dismissing the action. The judge who tried the case below, being of the opinion that the cause involved the determination of the proper construction of the statutes of this state in relation to the issuance of bonds by the several counties of the state, and that it was desirable to have the opinion of the supreme court upon said question, ordered and directed the proceedings to be brought to this court for determination of the following questions: (1) Can the board of county commissioners issue bonds of the county for the funding of outstanding warrants without a vote of the people of the county, where the amount of the existing indebtedness of said county is less than one and one-half per centum of the taxable property of said county, as ascertained by the last assessment for state and county purposes? (2) Can the board of county commissioners issue the bonds of said county for county purposes without being authorized by the vote of the people of said county, where the amount of said bonds, together with the outstanding indebtedness of said county, does not exceed one and one-half per centum of the taxable property of said county, as ascertained by the last assessment for state and county purposes?

The first section of the funding bond act of March 21, 1890, empowers each and every organized county in this state, by and through its board of county commissioners, to contract indebtedness for general county purposes, in any manner, when they deem it advisable, not exceeding an amount, together with the existing indebtedness of such county, of one and one-half per centum of the taxable

property in such county, to be ascertained by the last assessment for state and county purposes previous to the incurring of such indebtedness. Laws 1889–90, p. 37. Section 2 of the act provides that such counties may contract indebtedness for strictly county purposes in excess of the amount named in the preceding section (1), but not exceeding in amount, together with existing indebtedness, five per centum of the taxable property, to be ascertained as provided in § 1, whenever three-fifths of the voters of the county assent thereto at a general or special election to be held for that purpose consistent with the general election laws. Neither of these sections make any provision for issuing bonds of the county to pay or fund indebtedness contracted as therein specified. That authority is conferred by the third section only. And it would be clear beyond a doubt that the legislature by that section intended to empower the county commissioners to issue bonds to pay or fund existing county indebtedness within the limits prescribed in § 1 without submitting the question to the vote of the people, were it not for the words at the close of the section, "then the board of county commissioners of such county is authorized and empowered to issue its negotiable bonds in the name of the county for the purposes for which such election was held." The words "such election" would seem, however, to refer to the election mentioned in a preceding part of the section, which must be held whenever the board of commissioners shall submit to the voters of the county the question of issuing bonds to procure money (not to fund existing indebtedness) for strictly county purposes. That is the only election mentioned which, in terms, is required to authorize the board of commissioners to issue county bonds. But the expression, "for the purpose for which such election was held," when read in connection with the first clause of the section, renders the meaning ambiguous, and we must

therefore ascertain the intention of the legislature by the application of authorized rules of construction. One of these rules is that, if a literal interpretation of any part of a statute would be contrary to the evident meaning of the act taken as a whole, it should be rejected; and the best way to discover the meaning when expressions are rendered ambiguous by their connection with other clauses is to consider the object of the law and the causes which led to its enactment. *Heydenfeldt v. Daney Gold, etc., Co.,* 93 U. S. 634, 638; *Lamp Chimney Co. v. Brass and Copper Co.,* 91 U. S. 656, 662. Another rule is, that "a thing within the intention is as much within the statute as if it were within the letter; and a thing within the letter is not within the statute if contrary to the intention of it." *People v. Utica Insurance Co.,* 15 Johns. 358, 381 (8 Am. Dec. 243); *Insurance Co. v. Gridley,* 100 U. S. 614. Before the passage of this act no provision had been made for funding county indebtedness contracted after January 1, 1888. Many of the counties were paying ten per cent. interest per annum upon their outstanding warrants; and one of the objects of the statute was to provide for funding such indebtedness at a lower rate of interest, and thus relieve the tax-payer of a portion of his burdens. And from these circumstances, and from the history of this legislation, we are convinced that the legislature intended, as did the framers and promoters of the act, to provide for funding existing county indebtedness, lawfully incurred, without the expense and delay incident to submitting the question of issuing bonds to a vote of the people. This intention will be clearly expressed, and all parts of § 3 be made to harmonize with each other, by rejecting the words last above quoted, as not being applicable to cases of indebtedness incurred, as in this instance, under the provisions of § 1 of the act. No other construction of the statute will relieve it from ambiguity, or express what we believe to be its intention. The first

question propounded by the court below is therefore answered in the affirmative. The majority of the court being of the opinion that the second question is not involved in the case now before us, it will not now be decided. The cause will be remanded to the court below, with instructions to enter final judgment for defendants.

STILES, HOYT, and DUNBAR, JJ., concur.

SCOTT, J., did not sit at the hearing.