UNITED STATES v. BAUMGARTNER.

(District Court, S. D. California, S. D.    August 8, 1919.)

No. 1788.

1. INTOXICATING LIQUORS ☞2½, New, vol. 8A Key-No. Series—CONSTITUTIONAL LAW—PROHIBITION DURING WAR TIME.

Congress has constitutional power to prohibit the manufacture and sale of intoxicating liquors during war.

2. INTOXICATING LIQUORS ☞134—WAR-TIME PROHIBITION—LIQUORS PROHIBITED.

Act Nov. 21, 1918, providing that no beer, wine, or other intoxicating liquors shall be manufactured or sold during continuance of the war, etc., refers only to intoxicating beer and wine.

3. STATUTES ☞193—CONSTRUCTION—"NOSCITUR A SOCIIS."

Under the doctrine "noscitur a sociis" the meaning of doubtful words may be ascertained by referring to the meaning of associated words.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Noscitur a Sociis.]

4. STATUTES ☞194—CONSTRUCTION—"EJUSDEM GENERIS."

The doctrine of "ejusdem generis" means that general and specific words capable of an analogous meaning take color from each other, so that the general words are restricted to a sense analogous to the less general; citing Words and Phrases, First and Second Series, Ejusdem Generis.

5. INTOXICATING LIQUORS ☞134—WAR-TIME PROHIBITION—"INTOXICATING LIQUOR."

The term "intoxicating liquor," as used in War-Time Prohibition Act Nov. 21, 1918, means any liquor, intended or capable of being used as a beverage, containing a proportion of alcohol which will produce intoxication when the beverage is taken in such quantities as it is practically possible for a man to drink.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Intoxicating Liquor.]

6. INTOXICATING LIQUORS ☞216—INFORMATION—SUFFICIENCY.

An information under War-Time Prohibition Act Nov. 21, 1918, is fatally defective for failure to allege that the beer sold was in fact intoxicating.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Information by the United States against Joseph Baumgartner. Demurrer to information sustained.

Robert O'Connor, U. S. Atty., and Gordon Lawson, Asst. U. S. Atty., both of Los Angeles, Cal.

Theo. A. Bell, of San Francisco, Cal., and E. J. Emmons, of Bakersfield, Cal., for defendant.

BLEDSOE, District Judge. The question arising herein concerns the present applicability and scope of the act of Congress of November 21, 1918, c. 212, 40 Stat. 1045, providing for war-time prohibition. A demurrer has been interposed to an information filed against the defendant charging that he did in this district, "on the second day of July, 1919, * * * knowingly, willfully, and unlawfully sell, for beverage purposes and not for the purpose of export, beer containing as much as one-half of one per cent. of alcohol, by both weight and volume, to Edward Guthrie," etc. The only point involved is whether or not it should have been alleged, in order that a public offense might have been described, that the beer so sold was "intoxicating." The precise point has been presented to the District Court in a number of districts throughout the country, and, without special enumeration, the rulings thereon have been diverse. I have therefore endeavored to give the matter the benefit of my own independent judgment.

[1] It should be said in passing that, pending the operation of the prohibition amendment to the federal Constitution, Congress probably possesses no authority to pass prohibition measures for the whole country, the exercise of the police power in such respect being reserved to the states. Under its war power, however, the power no less to declare, than to carry to successful conclusion, any war made necessary, Congress possesses complete authority, pending the continuance of such war, to enact such legislation as would reasonably be considered as aiding in the prosecution of the war. To conserve the man power and increase its efficiency by a denial of intoxicants which would have a detrimental effect, and to conserve the foodstuffs and food resources of the nation, as a part of the necessary war program, would clearly fall within the domain of constitutional legislation, in my judgment.

By an act passed August 10, 1917, c. 53, § 15, 40 Stat. 282 (Comp. St. 1918, § 3115⅛l), having the above aims in mind, it was provided that "from and after thirty days from the date of approval of this act, no foods, fruits, food materials, or feeds shall be used in the production of distilled spirits for beverage purposes. * * * Nor shall there be imported into the United States any distilled spirits." In addition, in the same section of the act, the President was authorized from time to time to prescribe and give notice of the extent of the limitations and prohibitions made necessary and provided for therein.

On November 21, 1918, the act involved herein was passed, and in addition to providing that nothing in its terms should be construed to interfere with the power conferred upon the President by section 15 of the act of August 10, 1917, it provided with respect to liquor for beverage purposes, and not for export, pending the conclusion of

the war and until the termination of demobilization as proclaimed by the President, that—

"After June thirtieth * * * it shall be unlawful to sell * * * any distilled spirits. * * * After May first * * * no grains, cereals, fruit, or other food product shall be used in the manufacture or production of beer, wine, or other intoxicating malt or vinous liquor. * * * After June thirtieth * * * no beer, wine, or other intoxicating malt or vinous liquor shall be sold. * * * After the approval of this act no distilled, malt, vinous, or other intoxicating liquors shall be imported into the United States. * * * That the President of the United States be, and hereby is, authorized and empowered, at any time after the passage of this act, to establish zones of such size as he may deem advisable about coal mines, munition factories, shipbuilding plants, and such other plants for war material as may seem to him to require such action whenever in his opinion the creation of such zones is necessary to, or advisable in, the proper prosecution of the war, and that he is hereby authorized and empowered to prohibit the sale, manufacture, or distribution of intoxicating liquors in such zones," etc. Section 1.

The specific provision of the act under which the present prosecution is had is that above adverted to, to the effect that after June 30, 1919, "no beer, wine or other intoxicating malt or vinous liquors shall be sold for beverage purposes, except for export."

The recital in the information that the beer sold contained "as much as one-half of 1 per cent. of alcohol by both weight and volume" is not found in any statute. It was inserted because of the fact that the government of the United States, through its Internal Revenue Department, has determined, so far as the collection of revenues is concerned at least, that "within the intent of the act of November 21, 1918, a beverage containing one-half of 1 per cent. or more of alcohol by volume will be regarded as intoxicating." The implication therefrom is that less than one-half of one per cent. of alcohol would be considered as nonintoxicating. It is because of this ruling by the department that the phrase was inserted in the information, but the United States attorney admits that the information may just as well be read as if the reference to the quantity of alcohol contained in the beer had been omitted.

So in the substantial aspect of the case the defendant stands charged under the act named with the sale of "beer." It is not asserted that such beer was intoxicating, and hence he contends that in the presence of that bald allegation only, no crime is alleged. With this contention I am constrained to agree.

[2-5] In the first place, I think from a careful reading of the statute it was the intention of Congress that the sale of intoxicating beer only should be prohibited. True it is, in words, the inhibition was laid against beer and wine, with no qualifying description; but true it is also that that was done within the limits of the same sentence, and in immediate proximity to language which proclaimed an inhibition against "all other intoxicating malt or vinous liquor." It is both necessary and permissible here to use two well-established rules of statutory construction. First, the doctrine of "noscitur a sociis," which means that "the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it" (29 Cyc. 1065); and also the doctrine of "ejusdem generis," which in its practical ap-

plication simply means that "general and specific words which are capable of an analogous meaning, being associated together, take color from each other, so that the general words are restricted to a sense analogous to the less general." 3 Words & Phrases Judicially Defined, p. 2328. The same maxim or rule was stated by Lord Tenterden in a little different language:

"Where a statute or other document enumerates several classes of persons or things, and immediately following and classed with such enumeration the clause embraces 'other' persons or things, the word 'other' will generally be read as 'other such like,' so that persons or things therein comprised may be read as ejusdem generis with, and not of a quality superior to or different from, those specifically enumerated." 21 Am. & Eng. Ency. of Law, p. 1012.

Employing these aids to construction, I am persuaded that the words beer and wine, as used in the statute, were intended by Congress to be qualified and explained by the words immediately following, and that they were intended to include only beer or wine which was in fact intoxicating. It is a familiar rule that "a thing which is within the intention of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers." Insurance Co. v. Gridley, 100 U. S. 614, 615 (25 L. Ed. 746).

The government contends, however, that, irrespective of subsequent expressions, the use of the unmodified phrase "beer" makes the sale of "beer," whatever its alcoholic content or intoxicative effect, under the statute, unlawful. If the government's contention be correct, then the clause in question should be read as if it had been enacted as follows: " * * * No beer or wine, whether intoxicating or not, shall be sold." If Congress had said this, though, it would have followed it up by saying that in addition, "No other malt or vinous liquors, whether intoxicating or not, shall be sold." But this last it did not say, but did say that no other "intoxicating" malt or vinous liquor should be sold. It cannot reasonably be contemplated, in my judgment, that Congress for any cause, conservation of man power, increase of efficiency, or conservation of foodstuffs, intended to prohibit the sale of nonintoxicating wine and beer, and yet intended to permit the sale of other nonintoxicating malt and vinous liquors. Congress surely intended to be sensible and consistent. This could be accomplished only by the inhibition being laid upon all the nonintoxicating liquors included within the terms malt and vinous liquors, or by the inhibition being laid only on the intoxicants included therein. The former Congress did not do, because the statute expressly inveighs against nothing but "intoxicating malt and vinous liquors." It therefore permits, because not otherwise contrary to law, the sale of nonintoxicating malt and vinous liquors. It did not therefore intend, in my judgment, to prohibit the sale of nonintoxicating beer or wine, if there be such commodities. This view is arrived at by a process of thought made use of by Judge Deady of the Oregon district, in a strikingly similar situation, in United States v. Loftis (D. C.) 12 Fed. 671, 673. "The general phrase with which the enumeration ends * * * impliedly asserts that the things before enumerated" are to be of an intoxicating character.

This conclusion, I think, is fortified by a recapitulation of the inhibitions prescribed by Congress for the war-time period. By the act of August 10, 1917, the substantial features of which were kept in effect by the act of November 21, 1918, it was provided that after September 10, 1917, no foods, fruits, etc., should be used in the production of distilled spirits. It was likewise provided that after that date no distilled spirits should be imported into the United States. "All spirituous liquor is intoxicating." 23 Cyc. 59. By the later act, arraying the matters mentioned consecutively in point of time, it was directed that after November 21st the President, in defined industrial zones, at his discretion, because of the pressing necessity therefor, might prohibit the sale, manufacture, or distribution of "intoxicating liquors." After November 21st no distilled malt, vinous, or other intoxicating liquors were to be imported. After May 1st no grains, cereals, fruits, etc., should be used in the manufacture or production of beer, wine, or other intoxicating malt or vinous liquor. After June 30th no distilled spirits were to be sold, and also after June 30th no beer, wine, or other intoxicating malt or vinous liquors were to be sold. Throughout the whole course of this legislative history upon this particular subject, as thus portrayed, the idea is ever present that Congress was intending to place a restraint upon either the manufacture, the importation, or the sale of intoxicating liquors. In no way in which these provisions may be read, taken all together, does it appear at any time that Congress was intending to place an embargo upon either the manufacture, sale, or importation of anything which was in fact nonintoxicating, and therefore not destructive in its effect upon the individual consumer thereof.

This view is made materially manifest, in my judgment, by a consideration of the additional fact, above adverted to, that in the presence of the greatest necessity which Congress had in mind, and in which the embargo was to be laid only at the discretion of the President, to wit, in connection with the establishment of zones about highly necessary industrial activities, in that particular and important instance, where even the manufacture itself of the commodity was expressly forbidden, the prohibition decreed extended only to intoxicating liquors, and did not include nonintoxicants.

My conclusion is that the act in question attempts and intends to prohibit the sale of intoxicants only, whether beer or wine or other beverage. By that term must be understood "any liquor intended for use as a beverage, or capable of being so used, which contains such a proportion of alcohol that it will produce intoxication when imbibed in such quantities as it is practically possible for a man to drink," 23 Cyc. 57.

[6] It being necessary for the government to prove that the beer sold was of an intoxicating nature, in order to show a violation of the act, it is necessary that they should so allege; not having done so, the demurrer to the information is well taken.

These views I believe to be sustained by the conclusions of the District Court of the Southern District of New York in Hoffman Brewing Co. v. McElligott, 259 Fed. 321, decided May 17, 1919, and thereafter af-

firmed, in this respect at least, by the Circuit Court of Appeals of the Second Circuit, June 28, 1919 (259 Fed. 525, —— C. C. A. ——). I think the view is supported generally also by the holding in each of the following cases, the facts and reasoning of which, although not involving the present statute, seem applicable. Insurance Co. v. Gridley, supra; Potts v. United States, 114 Fed. 52, 51 C. C. A. 678; People v. Strickler, 25 Cal. App. 60, 142 Pac. 1121; Bowling Green v. McMullen, 134 Ky. 742, 122 S. W. 823, 26 L. R. A. (N. S.) 895; State v. Virgo, 14 N. D. 293, 103 N. W. 610.

We are not concerned with the statute of a state which has the right, in the exercise of its police power, absolutely to prevent the sale of beer, whether it be intoxicating or not, merely in aid of general prohibition legislation, and as an effective preventive of fraud and subterfuge. Purity Extract Co. v. Lynch, 226 U. S. 192, 204, 33 Sup. Ct. 44, 57 L. Ed. 184. Any such statute, if it provided that "beer" (irrespective of its intoxicative effect or alcoholic content) might not be sold, would be valid, and should be enforced. Such a situation, however, is not presented in the instant case.

The demurrer to the information is sustained.