LONG v. TIMMS, *Appellant.*

*DIVISION ONE.*

1.  **Contingent Remainder, Taking Effect of.** A deed by a
    husband to his wife for life, and at her death to his grandson *and*
    granddaughter by name, and in case of the death of said grand-
    son *and* granddaughter without issue then to his daughter, limits
    the daughter to a contingent remainder to take effect only upon
    the death of both grandchildren without issue.

2.  **Deeds: WILLS: CONSTRUCTION.** The controlling canon for the
    construction of deeds, as of wills and other instruments of writing,
    is to ascertain the meaning of the grantor from the words he uses,
    in the light of the circumstances which surrounded him and
    attended upon his use of them.

*Appeal from Clay Circuit Court.*—HON. J. M.
SANDUSKY, Judge.

REVERSED.

*Simrall & Sandusky* and *John K. Cravens* for
appellants.

(1) In order to ascertain the true intent, meaning
and purpose of the deed made by Valentine Smallwood
Peyton, December 5, 1836, the court must take into
consideration the circumstances in which he then stood
with respect to the members of his family. The intent,
meaning and purpose of the grantor is the proper legal
interpretation of the deed. The court will enforce that
purpose and interpretation, unless to do so would
violate some fixed rule of law. 3 Wash. on Real Prop.
[4 Ed.] pp. 384, 404; *Gathright v. Callaway Co.*, 10
Mo. 663; *Jones v. DeLassus*, 84 Mo. 541; *Dobbins v.
Edmonds*, 18 Mo. App. 307; *Hildebrand v. Fogle*, 20
Ohio, 147; *Swain v. Saltmarsh*, 54 N. H. 9. (2) The
deed to Mrs. Long and to Moss must be taken into

consideration as constituent parts of the one whole transaction to accomplish the purpose which Valentine Smallwood Peyton had to make equal division of this homestead between his daughter, Mrs. Long, and the children of his daughter, Mrs. Collier. ( 3 ) In the deed to Mrs. Long, there is no suggestion of a remainder over to the children of Mrs. Collier. ( 4 ) By the express terms of the deed to Moss the legal estate and title were to remain in him in trust until the death of Elizabeth Peyton. Only at her death was the trust to cease, and at that date only should the title vest in the children of Mrs. Collier. 2 Wash. on Real Prop. [ 4 Ed.] p. 457, *et seq.; Baker v. Nall,* 59 Mo. 265. ( 5 ) The intent with which Peyton made the deed was, *first,* to make provision for his wife during her life ; *second,* to make provision for the children of Mrs. Collier, his daughter ; and, *last,* and only in the event of the failure of the Collier line should the land go to Mrs. Long. *Shickle v. Iron Co.,* 84 Mo. 161 ; *Ewing v. Burnett,* 11 Pet. 41 ; *Bruensman v. Carroll,* 52 Mo. 315. ( 6 ) The grandchildren took in remainder ; the remainder vested in them as a class of children. They were to come into enjoyment at the death of Mrs. Peyton, the grandmother. The class was subject to diminution, by the death of one of its members, or both, before the expiration of the estate of Woodson J. Moss ; but to as many of the members of the class as were living at the death of Mrs. Peyton, the estate in remainder became absolute. *Springer v. Congleton,* 30 Ga. 976 ; *Stedman v. Priest,* 103 Mass. 293. ( 7 ) Only "in case of the death of the said Valentine Smallwood Peyton Collier and Louisa Frances Collier, infant children of Nancy McClanahan Collier, without issue," could the remainder go to Mrs. Long.

*D. C. Allen* for respondent.

( 1 ) Cross-remainders may be created by deed or will ; but where they arise from a deed they must be

created by express limitation, for in a deed they cannot have an origin by implication.   This is a fundamental rule of law.   In the deed of December 5, 1836, there is clearly no cross-remainder as between Valentine Small-wood Peyton Collier and his sister, Louisa Frances Collier.   1 Thomas' Coke [Ed. 1836] p. 603, note 1, and cases cited ; 4 Cruise's Digest [Ed. 1834] p. 319, par. 60, and cases cited ; 2 Leading Cases in Am. Law of Real Prop. p. 416.   (2)   At the date of the deed of December 5, 1836, neither Valentine Smallwood Peyton Collier nor his sister, Louisa Frances Collier, had heirs of their bodies.   They were both small children.   What-ever the estate intended them by that deed, it was in abeyance    until    the    death    of    their    grandmother, Elizabeth Peyton, August 6, 1862, twenty-four years after the death of Louisa Frances Collier.   Louisa Frances Collier, at the time of her death, was not seized of any inheritable estate in the lands ; and, there being no cross-remainder as between herself and brother, under the operation of the statute the remainder to the half of the land which would have become the property in fee simple of Louisa Frances Collier, upon the death of her grandmother and issue born to herself, living at her death, if issue had been born to her, immediately became vested in Frances Elizabeth Long, the mother of respondent.   R. S. 1835, sec. 5, p. 119 ; *Farrar v. Christy*, 24 Mo. 453, 467, *et seq.; Farrar v. Christy*, 33 Mo. 54 ; *Harbison v. Swan*, 58 Mo. 153 ; *Thompson v. Craig*, 64 Mo. 315 ; *Charles v. Patch*, 87 Mo. 463 ; *Wood v. Kice*, 103 Mo. 334.   It is submitted that the cogency of Judge Scott's reasoning in the opinion in the  case  of  *Farrar  v.  Christy*,  24  Mo.  453,  is decisive against the appellant here.   The richness of citation in the briefs of counsel there yields abundant learning on every feature of this case.

BRACE, J.—This is an action in ejectment in which the plaintiff seeks to recover an undivided fourth part

of certain real estate described in the petition.   There is no dispute about the facts, the case was tried by the court without a jury, and the plaintiff obtained judgment for the undivided eighth part of the premises; and the defendant appeals.

Valentine S. Peyton is the common source of title. In the year 1836, he was seized in fee simple of a tract of land in Clay county, containing two hundred and seventy acres, on which he, with his wife, was then residing.   He then had living one married daughter, Mrs. Frances Elizabeth Long, wife of Garrard Long, and two grandchildren, Louisa Frances Collier and Valentine Smallwood Peyton Collier, minors of tender years, children of his deceased daughter, Nancy.   Mrs. Long and her children and these grandchildren were his only lineal descendants.

On the fourth of October, 1836, the said Peyton by deed duly executed, in which his wife joined, conveyed to his said daughter, Frances Elizabeth Long, the fee simple to the south half of his said land, reserving, however, the use of the house, improvements and improved land, except five acres, to his wife during her natural life.

On the fifth of December, 1836, the said Peyton and his wife duly executed the following deed:  "This indenture made and entered into this fifth day of December, in the year of our Lord eighteen hundred and thirty-six, between Valentine S. Peyton, of the county of Clay, and state of Missouri, of the one part, and Woodson J. Moss, of the county and state aforesaid, of the other part, witnesseth:  That, whereas the said Valentine S. Peyton having realized from the sale of a tract of land, the property of his wife, Elizabeth Peyton, the sum of $3,762.79 is desirous and willing to secure to her some equivalent for the same.   Now, therefore, in consideration of the premises aforesaid, and with the view of providing for the support and maintenance of his said wife, and in consideration of the

natural love and affection which he, the said Valentine
S. Peyton, has for his grandchildren, Valentine Small-
wood Peyton Collier and Louisa Frances Collier, being
the children of his daughter, Nancy McClanahan
Collier, formerly Nancy McClanahan Peyton, of Nicho-
las county, Kentucky, the said Valentine S. Peyton has
granted, bargained, sold and set over, and by these
presents doth grant, bargain, sell and set over unto the
said Woodson J. Moss all that certain piece or parcel of
land situate, lying and being in the county of Clay, and
state of Missouri, aforesaid, to-wit, the north half of the
tract, whereon we now live, to begin at the northwest
corner of said tract, thence south on the west line
thereof so far as by running a dividing line due east to
the east line, thence with that line north to the north-
east corner of said tract, and thence west to the begin-
ning to contain one hundred and thirty-five acres; and
also three certain slaves for life, to-wit, Henry, Jinny
and Sarah, to have and to hold, receive and take the
same to him, the said Woodson J. Moss, his heirs and
assigns to the only proper use and behoof of him, the
said Woodson J. Moss, his heirs and assigns forever.
In trust, however, and to the intent and purpose that
he, the said Woodson J. Moss, shall, and will, employ
and appropriate, or cause to be employed and appro-
priated for the use and benefit of the said Elizabeth
Peyton during her natural life, all the rents and profits
of the said lands and negroes, allowing the said Eliza-
beth Peyton the personal occupation of the said land
and the possession and use of the said negroes when-
soever and as long as she may choose. And the said
Woodson J. Moss is hereby authorized to sell at such
time, and on such terms as he may think best, all or any
of said negroes, and to put the money arising from such
sale or sales to interest, or pay over the same with the
interest which may have accrued thereon, or the interest
only, at his discretion, to the said Elizabeth Peyton
without security for its return in any event; and this

conveyance is upon this further condition, to-wit: That at the death of the said Elizabeth Peyton said convey- ance to the said Woodson J. Moss, his heirs and assigns shall be null and void, and the trust aforesaid shall cease, and the said land and one-half of the said negroes and their increase, remaining unsold, and one- half of the money unexpended, arising from the sale of such negroes as may have been sold, to revert and be the absolute property of the said Valentine Smallwood Peyton Collier and Louisa Frances Collier, said infant children of the said Nancy McClanahan Collier, and the other half of said negroes and their increase so remain- ing unsold, and the one-half of the money unexpended arising as aforesaid to revert to and become the absolute property of my daughter, Frances Elizabeth Long, and her heirs and assigns, and in case of the death of the said Valentine Smallwood Peyton Collier and Louisa Frances Collier, infant children of the said Nancy McClanahan Collier, without issue, then the said land above described and negroes and their proceeds, if sold, to revert to and be the absolute property of my said daughter, Frances Elizabeth Long, her heirs and assigns forever, and in case of the death of the said Frances Elizabeth Long, without issue, then the whole of the above-described negroes and their proceeds, if sold, to revert and be the absolute property of the said Valen- tine Smallwood Peyton Collier and Louisa Frances Collier forever."

The land in controversy, forty-five acres, is included within the boundaries described in this deed. Louisa Frances Collier died a minor without issue in 1838; Mrs. Elizabeth Peyton died in 1862. Prior to August 28, 1852, Valentine S. P. Collier, who is still living, had married, and then had, and now has, living issue of his marriage. On that day by deed duly executed, he con- veyed the premises in controversy to the said Garrard Long who entered into possession thereof, and the inter- est and possession thereby by him acquired was after- wards by mesne conveyances acquired by the defendant,

Joseph H. Timms, who was in possession when this suit was brought. Garrard Long died in 1877. Frances Elizabeth Long died March 14, 1886, intestate, leaving surviving her four daughters, one of whom, Lizzie M. Long, is the plaintiff in this case.

I.  It is contended for plaintiff that as Valentine S. P. Collier and Louisa Frances Collier were small children, without heirs of their bodies, at the time the deed of December 5, 1836, was executed; whatever estate was intended for them by this deed was in abeyance until their grandmother, Elizabeth Peyton, died, and Louisa having died without an inheritable estate in the lands, in infancy, without issue, long before the death of her grandmother; and no cross-remainder being created in express terms in the deed between her and her brother; upon the death of the said Elizabeth, the fee to the one undivided half of the land immediately vested in Francis Elizabeth Long, and that plaintiff being one of her four daughters, her only heirs-at-law, is therefore entitled to an undivided eighth of the premises—and the trial court so held.

It is obvious from the terms of the deed, that it was the intention of the grantor that the fee to the land should not vest in remainder until the death of his wife. To accomplish this purpose, it was conveyed in trust to another until that event should happen.

For the purposes of this case, it is unnecessary to define the nature and extent of the title deraigned by the defendant from Valentine S. P. Collier. If the plaintiff can recover at all, it must be upon the strength of her own title. The estate limited to her mother in the deed is a contingent remainder in fee simple. The important question to be determined is, has the contingency arisen in which she was to be let in to that estate? That contingency is defined in the deed in unmistakable terms to be "in case of the death of the said Valentine Smallwood Peyton Collier *and* Louisa Frances Collier, infant children of the said Nancy McClanahan

Collier *without issue.*" The contingency comprehended in these terms has not come to pass. Valentine Smallwood Peyton Collier is still living and has living issue, and as long as this condition exists the plaintiff has no present title which she can assert to draw to it a right of present possession.

The time has long since passed, when the tenure of lands by deed, if it ever existed in this country, was dependent upon the technical meaning of words, or construction of sentences in use among old English conveyancers. The controlling canon for the construction of deeds, as of wills and other instruments of writing to-day, is to ascertain the meaning of the grantor from the words he uses, in the light of the circumstances which surrounded, attended and waited upon his use of them. The dominant idea ever in the mind of a grantor in a deed is his property and who is to have it. Three times in this deed the grantor named his grandchildren, the grantees to whom the land is to go absolutely after the termination of the life-estate of his wife, and each time he couples them together not only by the copulative conjunction "and," but never fails to show in each instance their unity in his mind, by naming them always as the children of his deceased daughter, so that there might be no mistake, that in his mind they stood, not separate individuals in the grant, but together standing for, and in the place of, his deceased daughter, to whose blood in lineal descent the land was to go, and only in case of failure of issue of that blood was the land to go to his other daughter and her heirs. The land in remainder, after the death of his wife, was granted to them and their issue as a class of one root, and, until that class is exhausted, there it must remain whatever division of tenure the statute abolishing entails may make as between members of that class. Until it is exhausted, the heirs of Mrs. Frances Elizabeth Long have no present estate in the land granted. This conclusion seems irresistible from the body of the deed itself.

The fact of his having by another deed, executed a few days before, conveyed half of his real estate to his daughter, Mrs. Long, only serves to emphasize it. The judgment is reversed. All concur.