### KELLEY v MUTUAL LIFE INS. CO. OF NEW YORK.

(Circuit Court, S. D. Iowa, C. D. May 14, 1901.)

1. LIFE INSURANCE—PLACE OF CONTRACT.
   Where an application for life insurance was made in Iowa by a resident of that state, and the medical examination was made, the premium paid, and the policy delivered in Iowa, the policy is an Iowa contract, and governed by the laws of that state then in force.

2. SAME—IOWA STATUTE—CONSTRUCTION.
   Acts Iowa, 23d Gen. Assem. c. 33, entitled "An act to prevent discrimination in life insurance," contains a number of specific provisions prohibiting discriminations, and the further provision, "nor shall any company make any contract other than is plainly expressed in the policy issued thereon." Held, that such general provision was limited by the title of the act and the specific provisions, and applied only to discriminations.

3. SAME—CONSTRUCTION OF POLICY.
   A provision in a life insurance policy that it shall be incontestable after two years does not apply, where the insured dies within two years after the policy is issued, because the time will have expired before an action can be brought thereon under the laws of the state.

4. SAME—APPLICATION—COVENANT AGAINST SUICIDE WHILE INSANE.
   A covenant by an applicant for life insurance in his application that he will not die by his own hand while insane does not create a contract which will defeat a recovery on the policy where the insured

takes his own life while insane, since such covenant was one which it was impossible for the insured to observe, and known to be so by both parties.

5. SAME—CONSTRUCTION OF CONTRACT—DEPENDENT AND INDEPENDENT COVENANTS.

A life insurance policy contained an express provision that, on receiving satisfactory proofs of the death of the insured, the company would pay the amount of the policy to a third person as beneficiary, subject to the single condition that the premiums should be paid as they became due. In the application, which was attached to the policy and made a part of the contract, the insured covenanted that he would not die by his own hand while insane. He subsequently took his own life while insane. *Held*, that the covenants to pay the amount of the insurance and to pay the premiums were dependent, and affected the beneficiary as a party to the contract, but that the covenant of the insured against suicide while insane and that of the insurer to the beneficiary were independent, and the breach of the former by the insured could not affect the right of the beneficiary to recover, the premiums having been regularly paid.

Action at Law on Policies of Life Insurance.

Milton Remley and W. O. McElroy, for plaintiff.
W. E. Odell, for defendant.

McPHERSON, District Judge. By written stipulation a jury was waived, and the case was tried to the court on an agreed statement of facts. The action is one at law upon two life insurance policies issued by defendant on the life of Edward Kelley, the one for $2,500, in May, 1893, and the other in December, 1893, for $5,000. Edward Kelley died by his own hand while insane, in February, 1895, less than two years from the date of the older policy.

1. I will first consider the policy for $2,500. It is a tersely written policy, in large type and script, and could not possibly be misunderstood by even the most ignorant nonprofessional man, but for the first sentence thereof. The policy recites: "In consideration of the application for this policy, which is hereby made a part of this contract." Then follows an absolute promise to pay plaintiff herein the sum of $2,500 upon receipt of satisfactory proofs of death of Edward Kelley, subject to the provisions on the back of the policy, and subject to one condition, viz. the payment of all annual premiums when due. The company makes but one defense, that of suicide of the insured, while insane, within two years from the date of the policy. The beneficiary named in the policy is plaintiff herein, wife of the insured. The provisions on the back of the policy have no bearing on the case at bar, unless it be the one which provides that the policy is not contestable after two years. The entire defense consists in the recital of the policy that the consideration thereof is the application, and which is made a part of the policy as above recited, and a clause of the application to which I will presently refer. The application is like those usually annexed to policies. It has a great many recitals pertaining to the insured, his habits, his health, his past life, his ailments, and so forth and so on, as well as those pertaining to his relatives, their ailments, age, and cause of death. Every one of the statements in the application are conceded to have been truthfully made. But in the application pasted to the policy was a recital as

follows: "I also warrant and agree that I will not die by my own act, whether sane or insane, during the period of two years." That the true consideration of a contract can be shown by parol, and the expressed consideration contradicted, is denied by no one; or, as in this case, the true consideration can be shown by reference to the contract in its entirety. And the recital in the policy, that it was issued in consideration of the application, cannot be true. If there were no other consideration, the policy would be a mere naked promise to pay, both in substance and in form, which no court could enforce. The premiums paid and to be paid were the consideration.

But it is urged that the application is annexed as part of the contract. And herein arises the difficulty in this case.

2. Kelley and wife resided at the date of the application and the issuance of the policy in Iowa. The medical examination was in Iowa. The application was made in Iowa. Kelley until his death resided in Iowa, and Mrs. Kelley is still a resident of Iowa. Therefore, regardless of all things recited, the policy is an Iowa contract, and all Iowa laws upon the subject then in force entered into and formed part of the contract. Society v. Clements, 140 U. S. 226, 11 Sup. Ct. 822, 35 L. Ed. 497. One of those laws was the statute of April 17, 1890. That statute, among other things, provides, "nor shall any company make any contract, other than is plainly expressed in the policy issued thereon." Both by the general rules of construction, and by those rules of the Iowa statutes for the construction of statutes, words must be given the usual and generally accepted meaning. Section 48, par. 2, Code Iowa. We all know what the word "policy" means, and we know that it does not mean the "application." If that clause of the statute stood alone, the suicide clause in the application would be in contravention of the Iowa statute, and would be void, because it is not "expressed in the policy issued thereon." The title of the act in question is in conformity to the Iowa constitution, and is "An act to prevent discrimination in life insurance." Acts 23d Gen. Assem. c. 33. There are several specific recitals of the statute prohibiting discriminations in insurance. They are all followed by a section fixing a penalty for its violation. We have an older statute providing that, if the application is relied on as a defense, it must be annexed to the policy. That statute is still in force, unless repealed by implication, which is never looked upon with favor. It is also a rule that, when particular words of a statute or other writings are followed by general words, such general words in their meaning are controlled by the particular things recited. For these reasons I do not believe the statute in question is of any avail to plaintiff. The statute is against discrimination. Many things are condemned as acts of discrimination. But it is not claimed in the case at bar that the company was guilty of any discrimination. And I conclude that the general language of the statute above quoted can only be construed as referring to discriminations.

3. Another contention of plaintiff is without merit. Her counsel contend that under the Iowa laws, as suit could not have been brought until a time more than two years after the date of the policy,

the policy is incontestable. It is not only difficult to comprehend the point, but when it is comprehended it is seen to be too technical to warrant discussion.

4. If the premiums were paid, the company agreed to pay Mrs. Kelley the amount of the policy after the death of the insured. The insured agreed "that I will not die by my own act * * * while insane." He did die by suicide in February, 1895, while insane. To what extent he was insane the evidence does not show. He may have known right from wrong. He left a letter announcing his purpose, and giving some directions about his funeral and his insurance. He may have been driven to suicide by an irresistible and uncontrollable impulse. I am warranted in holding the latter. If this be so, then when Kelley agreed to not suicide while insane he was agreeing to that which was impossible to observe. He knew this when he so agreed, and the company knew it equally well. It was an impossible contract; impossible to observe, and an impossibility known by both parties when they so agreed. A text writer says: "A mutual undertaking between parties to do what both know to be impossible is vain and idle, lacking the elements of contract." And I refer generally to chapter 20, Bish. Cont. (1887 Ed.), for a discussion of this subject. It will not do to say the consequences could have been avoided by contract. The answer is that which has the form of a contract is nothing but words, and these words are "vain" and "idle." This is not a case where both parties, or even one of the parties, at the time the contract was entered into, had reason to believe the contract could be carried out. In such a case the rule is that the obligor is bound, even though it afterwards becomes impossible for him to observe the agreement. In such a case the obligor must provide against such a contingency. But here we have mere words thrown together in the form of a contract, impossible to observe, and so known to be by both the company and the insured, when the policy was issued. The company received the cash premium when the policy was issued, and a premium in like amount in 1894. Both these premiums the company retains. It has not paid them back, nor has it offered to pay them back. This is grossly inequitable, and should not be allowed.

5. But in allowing the plaintiff to recover I have greater confidence in another proposition, to which I have given much time. Whether sane or insane, I think the case turns on the question whether the conditions or covenants are dependent or independent. Aside from what I have said in paragraph 4 hereof, if the covenants are dependent, then the company has a defense in the fact that the insured suicided when insane. But, if the covenants are independent, the plaintiff is entitled to a recovery. Formerly, contracts were quite generally construed as making the covenants independent; but now, in cases of doubt, they are construed as having dependent covenants. But, after all, the contract must be considered in its entirety, and such construction given as will be fair and reasonable. For some of the cases throwing light upon this question of covenants, see Hyde v. Booraem, 16 Pet. 169, 177, 10 L. Ed. 925; Bank v. Hagner, 1 Pet. 455,

465, 7 L. Ed. 219; Railroad Co. v. Howard, 13 How. 330, 338, 14 L. Ed. 157; Pollak v. Association, 128 U. S. 446, 9 Sup. Ct. 119, 32 L. Ed. 474. I cite these cases only to show the general rules for determining what are dependent and what are independent covenants in contracts. And to the same effect are Parsons and Bishop on Contracts, under the topics of "Independent" and "Dependent" covenants. There is another rule of construction, which is that a contract of insurance must be construed most strongly against the company, and in favor of the beneficiary. With these rules in view, it becomes necessary to consider the contract of insurance in the case at bar. There is a maxim as old and as firmly established as any proposition pertaining to jurisprudence, which is, "The express mention of one thing is to the exclusion of another." The provisions on the back of the policy have no bearing on this case, and counsel for the company never referred to but the one, which provides that the policy cannot be contested after two years. And the policy expressly provides that after receiving satisfactory proofs of the death of Kelley, at its New York office, that it will pay Mrs. Kelley $2,500, subject to the one condition, and but one condition, which is that the premiums will be paid as they fall due. Here is "the express mention of one thing," viz. the one condition that will defeat the recovery; the failure to pay the premiums. The maxim is that such express mention of that one thing "is to the exclusion of another." But the defendant now insists that it is not to the exclusion of another, but that it is inclusive of the fact of suicide. The company agreed to pay Mrs. Kelley the amount of the policy at Kelley's death. The insured, or beneficiary, agreed to pay the consideration, viz. the premiums at fixed dates, in fixed amounts. These are dependent covenants. But can it be said that because Kelley suicided while insane, and thereby violated his agreement with the company, that the company may now refuse to perform its agreement with Mrs. Kelley? The argument, in substance, of the defendant's counsel, is "that Kelley did not keep his agreement with the company. Therefore the company may violate its agreement with Mrs. Kelley." The recent decision of the court of appeals for this circuit in case of Insurance Co. v. Hillmon (decided April 3, 1901) 107 Fed. 834, throws some light upon the question I am considering. In that case, with such an eventful history, I take it the court would not have divided upon the one point at least, if the defense urging Mrs. Hillmon's (beneficiary) alleged part in the alleged conspiracy had been set forth in the answer. In other words, the court of appeals, as it appears to me from both the majority and the dissenting opinion, unite in maintaining the position of Mrs. Hillmon, the beneficiary to the contract, "that she is a party to the contract." Whether this is so or not, the supreme court, by Fuller, C. J., in case of Bank v. Hume, 128 U. S. 195, 206, 9 Sup. Ct. 41, 32 L. Ed. 370, say:

"It is, indeed, the general rule that a policy, and the money to become due under it, belong, the moment it is issued, to the person or persons named in it as beneficiary or beneficiaries, and that there is no power in the person procuring the insurance by any act of his, by deed or by will, to transfer to any other person the interest of the person named."

And the chief justice cites many cases to sustain this proposition. And counsel, in argument of the case at bar, called my attention to no Iowa statute, and I know of none, in any way changing this rule, in case of such a policy as is in suit, issued by such a company as is defendant herein. The rule has been somewhat modified in cases of mutual assessment companies. But in this case the defendant is what is called an "old line company," which issues a policy, like the one in suit, on a certain and fixed cash premium, and a like fixed and certain premium annually thereafter during the life of the insured. If this be so, and the beneficiary must be a party to the transfer or disposition of the policy, is it not because there are three parties to the contract, viz. the company, the insured, and the beneficiary? And can the insured defeat the beneficiary by any act of his, excepting by a failure on his part to observe the one and the only expressed dependent condition, which was the payment of the premiums? Mr. Kelley could not, by assignment or sale, or pledge as collateral, have defeated his wife in her right to recover the amount of the policy. If he could not do so while sane, how could he by another act while insane? In the recent decision of the Iowa supreme court in Seiler v. Association, 105 Iowa, 87, 74 N. W. 941, 43 L. R. A. 537, in an opinion by Judge Waterman, these views are presented with great clearness and ability, showing with convincing force that it is one case where the policy is payable to the estate of the assured, and the defense of suicide can be maintained, but quite a different case where the beneficiary is another party and entirely innocent, and wholly free from all acts connected with the suicide. And see "The Suicide Clause," etc., 52 Cent. Law J. No. 6, p. 107, Feb. 8, 1901.

I am not unmindful of some judicial history. There was a policy before the supreme court which in terms provided that, if the insured suicided, the policy should be treated as null and void. The supreme court held that, if the insured suicided when insane, the beneficiary could recover. Insurance Co. v. Terry, 15 Wall. 580, 21 L. Ed. 236. In 1876, the case of Bigelow v. Insurance Co., 93 U. S. 284, 23 L. Ed. 918, was decided. In that case the policy provided that it became null and void "if the insured suicided when sane or insane." The insured having suicided while insane, the supreme court held that there could be no recovery. But the supreme court so held, as announced, because in the policy the contract was that the policy should be null and void in the event of suicide while insane. In the case at bar there is nothing in the policy to the effect that it becomes null and void if Mr. Kelley suicided, sane or insane. There is nothing in the application to the effect that no recovery can be had if Mr. Kelley violates his covenant to not suicide, while sane or insane; and I therefore insist that the decision of the supreme court in the Bigelow Case has no bearing on the case now under consideration. And there is no pretense that Kelley intended suicide when he procured the insurance. Therefore the case of Ritter v. Insurance Co., 169 U. S. 139, 18 Sup. Ct. 300, 42 L. Ed. 693, has no bearing on the question now being considered.

It is a fact of but little importance, and yet it is a curious fact, as appears from decisions of courts of last resort, that at one time

the company defendant herein used a policy in the precise terms as was in the Bigelow Case. It afterwards took that clause out of its policies, and now uses the form in suit. And yet the contention is that the meaning is the same. Then why the change? If the meaning remains the same, the only reason I can conceive of for making the change in the form of the policy is a reason the company does not urge, and will not care to urge. The fair and logical answer is that the meaning is not the same. Some of the reasons which persuade me that the conditions in the contract are independent covenants are as follows: (a) The company agreed to pay Mrs. Kelley, after Mr. Kelley's death, a fixed sum. (b) But that was on the condition that the cash and future premiums should be paid. (c) The two foregoing are the expressed dependent covenants. (d) The policy was to be paid, not at Kelley's death, but upon receipt of proofs of death in New York, which necessarily would be some days or weeks after the death. (e) The contract to pay the amount of the policy was by the company as obligor to Mrs. Kelley as obligee, which amount "belonged the moment it [the policy] was issued to the beneficiary." (f) The contract to not suicide while insane was by Kelley as obligor, with the company as obligee. (g) The fact that dependent covenants are expressly mentioned preclude the thought of others being dependent. (h) Mrs. Kelley, by accepting the policy, agreed to furnish proofs of death. That agreement on her part, and the agreement of the company to pay her $2,500, were dependent covenants. But that agreement on her part, and the agreement to pay the premiums, and the agreement of the company to pay her $2,500, were the only dependent covenants between Mrs. Kelley and the company.

6. The other policy in the suit is of date December 28, 1893, and is for $5,000. The receipt annexed shows that the 1894 premium was paid by the "owner." The other receipt for the premiums on account of the two policies are not produced, but presumably they are of the same form. This policy, excepting as to date and amount, is of the same form and words as the smaller policy in suit, excepting in one other particular; and the application corresponds with the application annexed to the other policy, excepting as to date, amount, and one other particular. This policy is payable to the insured, Edward S. Kelley, his executors, administrators, or assigns. Seven days after the policy is dated it was assigned by Mr. Kelley to R. P. Mulock, the father of Mrs. Kelley, who, it seems, was a creditor, and who at a still later date assigned the policy to plaintiff. But the application expressly stated that the policy was to be issued to Mulock. And this fact, coupled with the other fact, that Kelley in a very few days assigned the policy to Mulock, on a printed form furnished by the company, forces the conclusion that it was never intended to make the policy payable to the insured or his estate. This being so, I reach the conclusion that this policy is governed by the same rules as govern the other. And from what I have said it follows that plaintiff is entitled to a judgment for $7,500, with 6 per cent. interest thereon from a reasonable time after proofs of death were furnished, and 90 days thereafter will be fixed as the time when the interest shall commence. To each and all of which conclusions of

law, and to all of which judgment founded thereon, the defendant at the time duly excepted, and the defendant is hereby given 60 days from the date of judgment within which to have prepared, settled, and filed bill of exceptions.