GRIESA et al. v. MUTUAL LIFE INS. CO. OF NEW YORK.

(Circuit Court of Appeals, Eighth Circuit. April 5, 1909.)

No. 2,922.

1. APPEAL AND ERROR (§ 843*)—MATTERS REVIEWABLE—ACADEMIC QUESTIONS.

The power of a federal court to grant an order for the disinterment of the body of assured, in order that an autopsy might be held thereon for purposes of discovery, would not be reviewed after such disinterment and autopsy; the question being then largely academic.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 843.*]

2. DISCOVERY (§ 20*)—BILL FOR RELIEF.

Where a bill asks both for relief and discovery, the right to discovery is dependent on the right to relief, and, if the bill is insufficient for relief, it cannot be sustained as to discovery.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. § 27; Dec. Dig. § 20.*]

3. INSURANCE (§ 249*)—CANCELLATION OF POLICY—REMEDIES—EQUITY.

After the death of assured, a suit in equity will not lie for the surrender and cancellation of the policy because obtained by fraud; the insurer having a plain, speedy, and adequate remedy by interposing the fraud as a defense to an action at law on the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 537; Dec. Dig. § 249.*]

4. SPECIFIC PERFORMANCE (§ 4*)—SUBJECTS OF RELIEF—INSURANCE POLICY.

A bill will not lie for the specific enforcement of an insurance policy, providing for the delivery of bonds instead of the payment of money on

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

insured's death, since, on the insurer's refusal to perform, the beneficiary may recover as damages the money value of the bonds.

[Ed. Note.—For other cases, see Specific Performance, Dec. Dig. § 4.*]

5. INSURANCE (§ 611*)—POLICY—BREACH.

The filing of a bill by insurer for the cancellation of a policy, providing for the delivery of bonds on insured's death, after such event, alleging that the policy had been obtained by fraud, constituted a repudiation by insurer of its obligations, rendering it liable to an action at law for damages.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 611.*]

6. INSURANCE (§ 249*)—CANCELLATION OF POLICY.

Since a beneficiary under a policy payable in bonds could not on assured's death maintain a suit in equity for specific performance by the delivery of the bonds, that feature of the policy presented no circumstance to support a suit in equity by the insurer for the surrender and cancellation of the policy for fraud.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 249.*]

7. EQUITY (§ 44*)—REMEDIES SUBJECT TO ELECTION—ACTION AT LAW OR SUIT IN EQUITY.

Under Rev. St. § 723 (U. S. Comp. St. 1901, p. 583), providing that suits in equity shall not be sustained in either of the courts of the United States in a case where a plain, adequate, and complete remedy may be had at law, where a defendant has such a remedy for fraud, there is no concurrent remedy in equity therefor within the rule that plaintiff may elect which remedy he will choose, if the remedies at law and in equity are concurrent.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 141–145; Dec. Dig. § 44;* Courts, Cent. Dig. § 1230.]

8. DISCOVERY (§ 17*)—PARTIES.

Since any person interested in an action at law and having possession of evidence sought by discovery may properly be made a defendant to a bill for discovery, a widow, who was the owner of a cemetery lot in which her husband's body was interred and was the legal custodian thereof, was a proper party to a discovery proceeding to have the body disinterred, that an autopsy might be made which was expected to furnish evidence to be used in an action at law on a policy on the husband's life, though the widow was not a party to such action.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. § 18; Dec. Dig. § 17.*]

9. DISCOVERY (§ 27*)—USE OF EVIDENCE.

Where insurer, after insured's death, brought a suit in equity to cancel a policy to which relief it was not entitled, and in that suit obtained by motion for discovery the disinterment of insured's body and an autopsy thereon, it was complainant's duty thereafter to take the discovery as evidence into the action at law, instead of drawing such action into the suit in equity.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. § 39; Dec. Dig. § 27.*]

Appeal from the Circuit Court of the United States for the District of Kansas.

For opinion below, see 156 Fed. 398. See, also, 165 Fed. 48.

George J. Barker, Samuel A. Riggs, and Charles F. Hutchings, for appellants.

John S. Dean, Ferry & Doran, and Bishop & Mitchell, for appellee.

Before ADAMS, Circuit Judge, and RINER and AMIDON, District Judges.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

AMIDON, District Judge. Lucius H. Perkins, in his lifetime, procured policies of insurance upon his life to be issued, aggregating more than $500,000. Among others, the Mutual Life Insurance Company, complainant below, and appellee here, issued such a policy in his favor for $100,000. In less than a year after obtaining this large amount of insurance, he fell from his house and shortly after died. The complainant brought this suit in equity in the United States Circuit Court for the District of Kansas, against the executors of the last will and testament of said Perkins, and his widow and sons, who were the beneficiaries under the policy, alleging in its bill: That Perkins had taken out the insurance fraudulently with the deliberate purpose on his part to commit suicide; that he had purchased a fatal poison on the morning of his death, at a drug store in the town where he lived, gone upon the roof of his house, and there taken the poison with suicidal purpose, and, losing consciousness from its effect, had fallen from the house, resulting in his death. It is further alleged in the bill that it would be impossible to ascertain whether in fact he had taken the poison unless an immediate autopsy was had, because by delay the poison would become so absorbed into the tissues of the body that its presence could not be scientifically discovered. On the other hand, if a prompt autopsy could be had, it was asserted that it would be possible to scientifically discover the presence of the poison, and thus demonstrate that Perkins had come to his death by suicide. The bill further alleged: That, promptly upon receiving notice of Perkins' death, complainant had instituted an investigation to ascertain its cause, and had thereby discovered evidence tending strongly to show that he had committed suicide in the manner above described; that it thereupon promptly applied to his widow, the defendant Clara Luella Morris Perkins, who was the owner of the lot where he was buried, and the legal custodian of his body, asking that an autopsy might be held for the purpose of ascertaining the cause of his death. The widow declined to accede to this request. Thereupon complainants applied to the coroner of the county where Perkins was buried, asking that an inquest be held; but the coroner, exercising the legal discretion with which he is vested, declined to hold an inquest. From the bill it also appears that the policy of the complainant provides, not for the payment of cash, but for the issuance of 100 bonds for $1,000 each, payable in 20 years. Perkins left a last will and testament, in which he bequeathed to each of his three sons 20 of these bonds. The remaining 40 of them are set apart as a special fund; the income therefrom to be paid to his widow, but the capital upon her death to go to his sons.

This bill was filed July 19, 1907. The only relief prayed for therein is the surrender and cancellation of the policy upon the ground that it had been obtained by fraud. On the same day on which the bill was filed, a motion was also filed in the cause, in which an order of the court was asked authorizing the complainant to exhume the body and hold an autopsy thereon.

August 5, 1907, the executors brought an action at law on the policy against the insurance company as defendant, in the same court in which the bill was pending.

August 14, 1907, the executors and the widow filed a plea in the equity suit, setting forth the pendency of the action at law, and alleging that the complainant might by answer in that action plead as a defense all the matters contained in the bill, and further also pleading that it appeared upon the face of the bill that the complainant had a plain, adequate, and complete remedy at law. On the same day the other defendants filed a demurrer in the equity cause, challenging the jurisdiction of the court and the equity of the bill.

August 19th the complainant in the equity suit, as defendant in the action at law, filed in that action a motion for the disinterment of the body and an autopsy, identical with the motion then pending in the equity suit.

After some preliminary hearings, which are not now material, the cause came on before the court on the 4th day of September, 1907, for the purpose of disposing of the matters raised by the plea and demurrer, and by the motions. The trial judge stated, without much regard for chancery practice, that he would treat the suit in equity and the action at law as "consolidated" for the purpose of dealing with all the matters thus presented. Oral evidence was adduced by the parties, and the hearing continued from time to time until September 14, 1907, when the court entered an order in the equity suit directing the marshal of the court to exhume the body, and allow three persons named by the court to hold an autopsy thereon. This order was promptly executed, the autopsy held, and the persons making the same have filed their report, which is embodied in the record.

This left the suit in equity pending on the plea and demurrer. April 14, 1908, while this issue was still undecided, the complainant filed in the equity suit a motion for an injunction restraining the further prosecution of the action at law, assigning as a reason that:

"This court of equity having rightfully acquired jurisdiction of the parties and the subject matter of the controversy, for the purpose of granting certain necessary and indispensable equitable relief, will retain such jurisdiction to do complete justice between the parties and grant full relief."

This motion, and the issue raised by the plea and demurrer, were heard together, and on June 25, 1908, the court entered an order overruling the plea and demurrer and restraining the further prosecution of the action at law. The present appeal is brought to review that order, and error is assigned upon both its branches, viz.: (1) The overruling of the plea and demurrer; and (2) the restraining of the action at law.

We are first invited by counsel for appellant to pass upon the power of the court and its practice in granting the order for the disinterment of the body and the holding of an autopsy thereon. This order, however, has been fully executed. It is beyond the power of this court to grant any relief in respect of it. Any discussion of the subject upon which we might enter would be in a large measure academic. We therefore abstain from expressing any opinion upon those matters; but, lest our thus passing these questions by may be misconstrued, we expressly add that such action ought not to be interpreted

as even an implied approval by us either of the power exercised or the practice pursued by the trial court.

We pass then to the other matters. In dealing with them we shall be obliged to separate matters that were blended by the trial court and have been confused in the argument here. First, can the bill in equity be sustained even when combined with the discovery which was granted on the motion to exhume the body? This bill is not a bill of discovery, but a bill of relief. Such a bill, to be sure, is always also a bill of discovery. The answer for which it calls is evidence in behalf of the complainant, and, if the charges of the bill are not sufficient to elicit all the evidence which he deems his right, he may attach interrogatories to the bill, and elicit further evidence in that way; but, when a bill asks both relief and discovery, the right to the discovery is dependent upon the right to relief. If the bill is insufficient as to its relief, it presents no controversy in which the evidence sought by the discovery could be used. It may be that the framer of the present bill was aware of this rule, and therefore abstained from asking for the exhumation of the body in the prayer of the bill, but sought his discovery in the unusual method of a separate motion. It is the settled law of this circuit, and of the Supreme Court, that after the death of assured a suit in equity will not lie for the surrender and cancellation of the policy upon the ground that it was obtained by fraud, for the reason that the company has a plain, speedy, and adequate remedy by interposing the fraud as a defense to an action at law upon the policy. Insurance Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501; Cable v. United States Life Ins. Co., 191 U. S. 288, 24 Sup. Ct. 74, 48 L. Ed. 188; Riggs v. Union Life Ins. Co., 129 Fed. 207, 63 C. C. A. 365. In the absence of some peculiar circumstances therefore, the present bill is without equity, and its failure upon that ground would take away any basis for discovery.

Appellee contends that there are "peculiar circumstances" which exempt this case from the rule declared in the decisions above referred to. What are those circumstances?

1. It is first suggested that the policy of insurance provides for the delivery of bonds, instead of the payment of money, and therefore could only be enforced in equity. This feature is wholly without merit for two reasons: (1) A bill in equity will not lie for the specific enforcement of such a contract. On the contrary, as soon as it is violated, the company becomes liable to an action at law in which the plaintiff is entitled to recover as damages the money value of what would have been obtained from the company by a performance on its part. The filing of the bill itself shows that the company has repudiated its obligations under the policy and has therefore become liable to an action at law. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; Hyer v. Richmond Traction Co., 168 U. S. 471, 18 Sup. Ct. 114, 42 L. Ed. 547. (2) If the beneficiary under the policy could not maintain a suit in equity for its specific performance by the delivery of the bonds, surely that feature of the policy presents no circumstance that would support a suit in equity by the company for the surrender and cancellation of the policy.

169 F.—33

2. The second circumstance urged is that courts of equity have concurrent jurisdiction with courts of law as to matters of fraud, accident, and mistake, and, having taken jurisdiction of a cause involving either of these elements for the purpose of discovery, will retain jurisdiction to grant full relief. This is simply to bring into the conclusion matters which have already been rejected from the premise. Under section 723 of the Revised Statutes (U. S. Comp. St. 1901, p. 583), as construed by the federal courts, when the remedy at law is plain, speedy, and adequate as to fraud, there is no concurrent remedy in equity. If the remedies at law and in equity are concurrent, the plaintiff may choose which he will pursue. The decisions of the Supreme Court, and of this court, already cited, show that no such right of election exists in the federal courts as to such matters of fraud as are here involved. The basis therefore of this second "circumstance" is destroyed. The concurrent jurisdiction upon which it rests does not exist. Having once conceded that the fraud complained of constitutes no ground for equitable relief, we ought not to bring it forward as a "circumstance" which, when combined with discovery, will draw the entire controversy into equity. In the federal courts the basis for the rule discussed in section 225 of Pomeroy's Equity Jurisprudence does not exist, because the concurrent jurisdiction does not exist when the remedy at law is plain, speedy, and adequate, as the Supreme Court and this court have held it to be, in the present case.

3. As a third circumstance, it is said that a bill of discovery would not lie against Mrs. Perkins because she is not a party to the action at law; whereas, she would be an indispensable party to the bill of discovery because she was the owner of the cemetery lot and was the legal custodian of her husband's body. Bills of discovery, however, are not confined to the parties to the action at law. Any person interested in the action at law and having possession of the evidence sought by the discovery may properly be made defendant to such a bill. Mrs. Perkins comes clearly within this class. Agents have been made parties to bills for discovery to obtain evidence for use in an action at law against their principal.

In Orr v. Diaper, 4 Ch. Div. 92, the plaintiffs were manufacturers of sewing cotton and thread, and the defendants were shipowners who had carried to foreign markets thread purchased by other persons, and packed in the same manner as plaintiff's thread, and bearing counterfeit tickets. The object of the bill was to compel the shipowners to discover the names of the persons who were thus using the plaintiff's trade-mark. The bill did not allege any intention to sue the defendants therein, but sought the name of the unknown persons who had invaded the rights of the plaintiffs, to the end that they might be sued. The bill was held good. The vice chancellor said:

"It has been submitted that the defendants are mere witnesses, but their position is different from that of mere witnesses."

In Hoppock's Executors, v. Canal Co., 27 N. J. Eq. 286, a similar bill was sustained for the purpose of discovering the parties who had violated plaintiff's rights in order that they might be sued in an action at law. See, also, Hurricane Telegraph Co. v. Mohler, 51 W. Va. 1,

41 S. E. 421; Post v. Railroad Co., 144 Mass. 341, 11 N. E. 540, 59 Am. Rep. 86, where the authorities are fully reviewed. See, also, Pomeroy's Equity Jurisprudence, § 199.

If therefore the discovery sought could be legally granted (as to which we express no opinion), the circumstance that Mrs. Perkins was not a party to the action at law presented no obstacle to the filing of a proper bill of discovery against her, asking the relief which was here obtained upon the motion.

These are all the circumstances pressed upon our attention by counsel for appellee, and they are not sufficient to sustain the action of the trial court in drawing this entire controversy into equity. The bill in equity fails as a bill for relief, and as to that ground the plea and demurrer should have been sustained, and the bill dismissed.

We must deal with this case, however, to some extent as it was dealt with by the trial court. Taking into consideration the motions, bill in equity, and the complaint in the action at law, all of which were before the court, they embodied all the elements essential to a pure bill of discovery. The trial court treated them as having that force, and, acting upon that theory, made its order directing the exhumation of the body and the holding of the autopsy. We shall so regard them. We are well aware that the relief granted differs from that which is usually granted by bills of discovery. What the complainant desired, however, was evidence to aid it in maintaining its defense to the action at law in case the suit in equity failed. It was evidence which was sought. The circumstances which distinguish the relief granted from that which is usually obtained by bills of discovery relate rather to the power of the court than to the nature of the relief itself. In determining the effect of the relief granted upon the action at law, it must be regarded as in the nature of discovery. It certainly can confer no greater rights upon the complainant with respect to the action at law than would have resulted if the discovery sought had been such as equity has been accustomed to grant. Having obtained the desired discovery, it was the duty of the complainant to take that discovery as evidence into the action at law, instead of reversing the process by drawing the action at law into the suit in equity. Pomeroy's Equity Jurisprudence, §§ 223–228.

It necessarily follows that the court erred in restraining the action at law, and its order should be vacated and set aside. The bill in equity is also insufficient to entitle the complainant to any relief. It may, however, be allowed to stand as one of the elements which were before the trial court going to make up what should have been embraced in a proper bill of discovery.