**HEARIN v. STANDARD LIFE INS. CO. et al.**

(District Court, E. D. Arkansas, W. D. October 19, 1925.)

1. **Insurance** ⬅️445(3)—**That incontestable clause did not exempt from its scope liability for suicide held not to render subsequent clause denying such liability ineffective.**

Condition of insurance policy exempting insurer from liability in case of suicide within year *held* not inoperative merely because incontestability clause on face of policy did not exempt from its scope liability for suicide.

2. **Insurance** ⬅️146(1, 3)—**Policies construed as other contracts; policies construed most favorably to insured only when ambiguous.**

Insurance policies are construed as other contracts, and only if ambiguous most favorably to insured.

3. **Insurance** ⬅️146(1)—**Policy must be construed as a whole.**

In construing contract or insurance policy, every part of it must be considered and construed as a whole.

4. **Insurance** ⬅️445(3)—**Claim of nonliability because of suicide within year from date of policy held not required to be made within that year.**

Where provision of insurance policy declared that self-destruction within year from date of policy was risk not assumed, one year incontestable clause did not require that claim of nonliability should be made within year from date of policy, but only that suicide occur within that time to relieve insurer from liability.

At Law. Action by W. S. Hearin, guardian, etc., against the Standard Life Insurance Company and the International Life Insurance Company. On demurrer to parts of answer. Demurrer overruled.

McMillan & McMillan, of Arkadelphia, Ark., and R. E. Wiley, of Little Rock, Ark.; for plaintiff.

Carmichael & Hendricks, of Little Rock, Ark., for defendants.

TRIEBER, District Judge. The facts, so far as necessary for the determination of the issues raised by the demurrer to parts of the answer, are:

The plaintiff, in his complaint filed June 15, 1925, seeks to recover on a life policy issued by the Standard Life Insurance Company on May 6, 1924, and at a later day assumed by its codefendant, International Life Insurance Company. It alleges that the policy contained the following provision: "This policy shall be incontestable after one year from its date for the amount due, except for nonpayment of premiums, and except for death while in military or naval service in time of war, which is a risk not assumed by the company under this policy, and except as to provisions and conditions relating to benefits in the event of total and permanent disability and those granting additional insurance specifically against death by accident, which provisions may be attached hereto by rider."

"That at the time of the institution of the action more than one year had elapsed since the policy had been delivered to the as-

sured; that the assured died," but the complaint fails to state the date of his death. From the answer it appears that his death occurred on February 28, 1925, which, on the hearing of the demurrer, was admitted by counsel for plaintiff to be true; that the plaintiff complied with the terms of the policy in all respects as to notice and proof of death, but defendants refused to pay the amounts provided in the policy, denying all liability. It fails to state the date this refusal and denial of liability was made, or the reason for the denial of liability. A copy of the policy is filed with the complaint and made a part thereof.

The answer, so far as material to the demurrer, pleaded that: "That policy, in bold type on the first page thereof, provides, 'This policy is subject to the privileges and conditions recited on the subsequent pages hereof;' and the second page contains the following provision: 'Self-destruction, sane or insane, within one year from the date of this policy, is a risk not assumed by the company under this policy. In such event the company will return the premiums actually received.' And this defendant states the facts to be that on or about the 28th day of February, 1925, and before the year expired, the said Henry Clay Robbs (called H. C. Robbs and H. C. 'Buster' Robbs) committed suicide by shooting himself with a gun, which caused his death. That the cause of his death was self-destruction, and it occurred within one year from the date of the policy, and is a risk not assumed by the company under the policy. That the premiums paid were tendered to the proper party and said tender was refused. Therefore this defendant pleads self-destruction within the period of one year from the date of the policy as a full and complete defense to any liability upon said policy."

Counsel for demurrant rely on two grounds to sustain the demurrer: First, that, as the incontestability clause in the face of the policy does not exempt suicide from liability, the condition as to suicide on the second page of the policy is inoperative; second, if it is operative, it does not constitute a defense, no proceeding to cancel the policy having been instituted within one year from the date of the policy.

[1, 2] I. It will serve no useful purpose to cite the numerous authorities to sustain the following well settled principles of law. It is sufficient to refer to Hawkeye Commercial Men's Association v. Christy (C. C. A.) 294 F. 208, 213, and St. Paul Fire & Marine Ins. Co. v. Ruddy, 299 F. 189, decided by the Circuit Court of Appeals for this Circuit, that, policies of insurance must be construed as other contracts and only if a provision is ambiguous will it be construed most favorably to the assured. As held in the Hawkeye Commercial Men's Association Case, supra:

"The parties to insurance contracts have the right and power to contract for what accidents and risks the companies shall and for what accidents and risks they shall not be liable and the courts may not make new or different contracts for them. The function and duty of the courts consist simply in enforcing and carrying out the contract actually made by the parties. Imperial Fire Ins. Co. v. Coös County, 151 U. S. 452, 462, 14 S. Ct. 379, 38 L. Ed. 231. The natural, obvious meaning of the provisions of a contract should be preferred to any curious, hidden sense which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover. Delaware Ins. Co. v. Greer, 120 F. 916, 921, 57 C. C. A. 188, 61 L. R. A. 137; Standard Life & Accident Ins. Co. v. McNulty, 157 F. 224, 226, 85 C. C. A. 22. The reasonable and probable meaning of a stipulation in an agreement should be preferred to one that is irrational and improbable. Pressed Steel Car Co. v. Eastern Railway Co. of Minnesota, 121 F. 609, 611, 57 C. C. A. 635."

[3] It is equally well settled that in construing a contract or policy of insurance every part of it must be considered, and the contract construed as a whole. Green County v. Quinlan, 211 U. S. 582, 594, 29 S. Ct. 162, 53 L. Ed. 335; United States v. Ansonia Brass, etc., Co., 218 U. S. 452, 467, 31 S. Ct. 49, 54 L. Ed. 1107; Mutual Life Insurance Co. v. Kelly, 114 F. 268, 279, 52 C. C. A. 154 (C. C. A. 8th); National Life Insurance Co. v. Gregg, 168 Ark. ——, 269 S. W. 62; 13 C. J. p. 525; 32 C. J. p. 1148.

In the Gregg Case the Supreme Court of Arkansas, in which a similar question was in issue, aptly held: "Our conclusion is that this contention is not well founded, for the various clauses of the policy are to be read together, and clause F is a clear and unambiguous stipulation against liability where an injury results from either of the causes mentioned therein. The several clauses can be read together in harmony, and it is our duty to do so and give full effect to all of the clauses of the policy to the extent that they are harmonious."

In Mutual Life Ins. Co. v. Kelly, supra, the trial court, in 109 F. 56, 57, had held that: "The provisions on the back of the

policy have no bearing on the case at bar, unless it be the one which provides that the policy is not contestable after two years. The entire defense consists in the recital of the policy that the consideration thereof is the application, and which is made a part of the policy as above recited, and a clause of the application to which I will presently refer."

This the Circuit Court of Appeals held to be error, saying: "Accordingly, treating the application and all its terms and provisions as a part of each contract entered into between the insurance company and Kelly, what does it mean? In answering this question there does not seem to be any necessity for resort to technical distinctions between representations and warranties or affirmative or promissory warranties. The cardinal rule to be observed in construing all contracts is to determine, from a consideration of the four corners of the instrument or instruments creating it, what was the intention of the parties to the same. Insurance Co. v. Gridley, 100 U. S. 614, 615, 25 L. Ed. 746; Long v. Timms, 107 Mo. 512, 519, 17 S. W. 898. Subjecting the contracts in question to this test, it is very apparent, as we have already indicated in disposing of other branches of the case, that the death of Kelly by suicide at any time within two years after the date of the policy, whether sane or insane, was not a risk assumed by the insurer at all."

The facts in that case were stronger against the insurer than those in the instant case, as the condition against liability for suicide was not in the policy, as in the case at bar, but only in the application for the policy, which was made a part of the policy and was a part of the warranties containing other exemptions of liability.

Nor does the fact that the suicide condition is on the back and not on the face of the policy make any difference, as was held in Iowa Life Ins. Co. v. Lewis, 187 U. S. 335, 23 S. Ct. 126, 47 L. Ed. 204. The facts in that case were:

The policy on the back contained the provision that "It shall not go into effect until the premium hereunder * * * shall have been actually paid during the lifetime and continuance in good health of the insured. Upon payment of the premium there shall be delivered a receipt, signed by the president or secretary, and countersigned by an authorized agent." The insured paid the first premium on March 4, 1899, by a note due six months after date. The policy and a receipt for the premium were delivered to the assured on March 18, 1899. The receipt contained the following: "Read the notice to policy holders on the back of this receipt."

On the back of the receipt was, among other provisions, the following: "*Notice to Policy Holders.* If note be given for the payment of the premium hereon or any part thereof, and same is not paid at maturity, the said policy shall cease and determine."

The company retained the note, which its agent had sent it. The note was not paid at maturity, but on September 29, 1899, when very sick, the insured offered to pay it. The agent wired the company whether to accept payment, and was directed not to accept it, and he refused to do so, when tendered on September 30, 1899, and it was held that the company was not liable. This has been followed by all the federal courts since. It will be noticed from the opinion that authorities from the highest courts of several states, holding otherwise were disapproved.

This ground is without merit.

[4] II. Is the suicide provision subject to the same construction as the incontestability clause, that the cancellation of the policy, or rather the claim of nonliability, must be made within the one-year period, otherwise it cannot be pleaded as a defense, or is it a good defense if the suicide occurred within the one year period, although pleaded later?

Counsel for plaintiff rely on Mutual Life Ins. Co. v. Hurni Packing Co., 280 F. 18, decided by the Circuit Court of Appeals for this circuit and affirmed in 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102, and other authorities to the same effect, which it is unnecessary to cite, for, if that case applies, the plaintiff's contention must be sustained.

On behalf of defendants it is claimed that these authorities are inapplicable, as in none of these cases was a suicide condition in issue, but only fraud or false representations in the application for the policy.

The reason for sustaining such a limitation when the policy was issued on false representations or fraud in the application has been aptly stated in Missouri State Life Insurance Co. v. Cranford, 161 Ark. 602, 606, 257 S. W. 66, 67 (31 A. L. R. 93): "The modern rule is that a life insurance policy containing a provision that it shall be incontestable after a specified time cannot be contested by the insurer on any ground not excepted in that provision. It is said that the practical and intended effect of such a stipulation is to create a short statute of limitations. By the stipulation, the insurance

company agreed that it would take a year to investigate and determine whether it would contest the policies of insurance, and that, if it failed within that time to discover any grounds for contesting the same, it would make no further investigation and would not thereafter contest the validity of the policies."

How can the insurer investigate whether the insured will commit suicide? He may take his life within a day or two prior to the expiration of the period of limitation, or the beneficiary may not advise the insurer of the death of the assured until after the expiration of the limitation, or so short a time before that the insurer cannot possibly make the necessary investigation within the period required. Still, if the contention of counsel for plaintiff is to be sustained, the insurer would be prevented from disputing its liability, though the policy in clear and unambiguous language states that "death by self-destruction within one year from the date of the policy is a risk not assumed."

The language employed in the two provisions differs materially. The incontestability clause states that "the policy shall be incontestable after one year from its date," with certain exceptions not material to the issue now involved. On the other hand, the suicide clause, made a part of the policy as a condition, excepts "suicide within one year from the risk assumed," and in the face of the policy in large print, stated: *"This is subject to the privileges and conditions recited on the subsequent pages hereof,"* where the suicide condition is set out, thus calling the attention of the assured to it.

There is only one construction of these two provisions possible. In the one case, the policy is incontestable after one year from its date for false representations or fraud in the application; in the other the risk for suicide, if committed within one year, is not assumed. If a risk is not assumed, how can there be a liability? If there is no liability, why must there be a denial thereof before the expiration of the year? If the misrepresentations or fraud in the application for the policy are sought as a ground for relief from liability, it has been held by many courts, a bill in equity to rescind the contract of insurance or cancel the policy must be filed within the period prescribed; mere denial or tender of premiums is not sufficient. Jefferson Standard Life Ins. Co. v. McIntyre (C. C. A. 5) 294 F. 886; Reliance Life Ins. Co. v. Thayer, 84 Okl. 238, 203 P. 190; John Hancock Mut. L. Ins. Co. v. Dick, 114 Mich. 337, 72

N. W. 179, 43 L. R. A. 566. But, if the risk is not assumed, it certainly cannot be claimed by a bill in equity, to rescind the contract after the suicide, and of course none could be instituted before. To defend against a suicide there is a complete and adequate remedy at law and the insured is entitled to a jury trial. Insurance Co. v. Bailey, 13 Wall (80 U. S.) 616, 20 L. Ed. 501; Cable v. United States Life Ins. Co., 191 U. S. 288, 305, 24 S. Ct. 74, 48 L. Ed. 188; Riggs v. Union Life Ins. Co., 129 F. 207, 63 C. C. A. 365, aff., 203 U. S. 243, 27 S. Ct. 126, 51 L. Ed. 168, 7 Ann. Cas. 1104; Griesa v. Mutual Life Ins. Co., 169 F. 509, 94 C. C. A. 635.

The distinction between such clauses and the effect of them has been so clearly stated in Mutual Life Insurance Co. v. Kelly, supra, that there is little to add. Judge Adams, speaking for the court, said: "It cannot escape observation that the parties treated the agreements referred to as conditions of continuing liability on the part of the company. They are referred to as 'conditions,' and it is agreed that the only ones which shall be binding after two years are those relating to engaging in military or naval service in time of war. In all other respects it was agreed that 'if this policy matures after the expiration of the said two years the payment of the sum insured by this policy shall not be disputed.' This carries the reasonable implication that, if the policy should mature by the death of the insured within two years, the policies might be disputed for breach of any of the 'conditions' upon which liability depended."

And later on the same page: "But we do not wish to be understood as holding that it required any express agreement that the clause in question should be treated as a condition to liability. In our opinion, it, having been offered to and accepted by the company as a consideration of the assumption of the risk and for the continuance of liability for two years at least, is, in and of itself, a promissory warranty, requiring the insured to strictly conform thereto, in order to hold the company to a liability on the policies in favor of the beneficiaries. Failure to observe the stipulation of warranty, resulting, as in this case, in the death of the insured, undoubtedly absolves the insurance company from liability."

The opinions in the Kelly Case fail to show when the defendant pleaded that the death of the assured was self-inflicted within the two-year period, whether before or after the two-year period. But an examina-

tion of the record of the case, which the clerk of the Circuit Court of Appeals kindly sent me, shows that the policy was issued May 26, 1893, the death occurred on February 21, 1895, within the two-year period, and the claim of nonliability of the insurer was first made in its answer, filed May 21, 1896, almost three years after the date of the policy, and it was held that there was no liability.

Other authorities in point are Childress v. Fraternal Union of America, 113 Tenn. 252, 82 S. W. 832, 3 Ann. Cas. 236; Scarborough v. American National Ins. Co., 171 N. C. 353, 88 S. E. 482, L. R. A. 1918A, 896, Ann. Cas. 1917D, 1187; North American Union v. Trenner, 138 Ill. App. 586; Stean v. Occidental Life Insurance Co., 24 N. M. 346, 171 P. 786; Mutual Reserve Life Association v. Payne (Tex. Civ. App.) 32 S. W. 1063, 1065.

In the Scarborough Case it was held: "By the use of the term 'incontestable' the parties must necessarily mean that the provisions of the policy will not be contested, and *not that the insurance company agrees to waive the right to defend itself against a risk which it has never contracted to assume.*"

In Kelley v. Mutual Life Insurance Co. (C. C.) 109 F. 56, it was held, quoting from the head note: "A provision in a life insurance policy that it shall be incontestable after two years does not apply, where the insured dies within two years after the policy is issued, because the time will have expired before an action can be brought thereon under the laws of the state."

That the Circuit Court of Appeals in the Hurni Packing Company Case did not intend to overrule or modify the Kelly Case is apparent from the fact that the court in its opinion does not refer to it, although the only judge still a member of that court, who had participated in the hearing and concurred in the opinion of the court in the Kelly Case, Judge Sanborn, also sat in the Hurni Packing Company Case and concurred in the opinion of the court in that case. Of course he was familiar with what had been decided in the Kelly Case, and, if the court intended to overrule or modify it, would have so stated in the Hurni Packing Company opinion.

In the opinion of the court a proper construction of the policy as a whole should be read as follows: "This policy shall be incontestable after one year from its date for the amount due, except for nonpayment of premiums, and except for death while in the military or naval service in time of war, or for death from self-destruction, sane or insane, within one year from the date of this policy, which are risks not assumed by the company under this policy."

It is proper to call attention to the fact that the learned counsel for plaintiff in the instant case in the complaint neither set out the suicide condition in the policy, nor the date of the assured's death, which it is alleged in the answer was within one year from the date of the policy, and it also alleges "that it is now more than one year from the date of said policy or contract and that by the terms thereof the same is now incontestable and the defendants are estopped to contest the same."

No reason for these omissions was stated in the oral argument. It is also worthy of consideration that, although the death occurred in February, this action was not instituted until June, after the company had tendered the premiums paid by the assured, as provided in the suicide clause, and a month after the expiration of the one-year period, although the defendant repudiated liability at once when notified of the death. Is it unreasonable to presume that the object of these omissions and of this delay may have been to prevent this defense by demurrer to the complaint, in the belief that thereby they will bring themselves within the Hurni Packing Company Case, on which they relied in their argument as controlling in this case?

The demurrer is overruled.